USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/7/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONY HARRISON,

                Plaintiff,

-against-

C.O. TRAILOR, et al.,

                Defendants.

No. 17-CV-6678 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge

Plaintiff Tony Harrison ("Plaintiff"), an inmate in the New York State Department of Corrections and Community Supervision, ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983 against Defendants: C.O. Traylor, C.O. Rathengaber, C.O. Radway, C.O. Turman, Sgt. Johnson, Sgt. Plummer, Sgt. Claudio, Olga Marchese - Education Supervisor General, Lesley Malin - Deputy Superintendent of Programs, Jeff McKoy - Deputy Commissioner for Programs, and Superintendent Michael Capra, all of whom are employees of DOCCS, (collectively, "Defendants"). (*See* Complaint, ("Compl."), ECF No. 2.) Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6).

For the following reasons, Defendants motion is GRANTED.

## BACKGROUND

The conduct central to this case occurred while Plaintiff was an inmate at Sing Sing Correctional Facility ("Sing Sing").[1] (*See* Compl. ¶ 16.) Plaintiff alleges that in January, 2014, C.O. Trailor "deliberately labeled plaintiff... on the Sing Sing's ALPHA CELL BOOK movement and control sheet" causing Plaintiff to become a target to correctional officers and inmates that had

---

[1] Plaintiff now resides at Attica Correctional Facility.

1

access to this ALPHA CELL BOOK Movement and control sheets. (*Id.*) Plaintiff alleges that this labeling precipitated much unlawful conduct, namely: 1) it prevented him from getting a position as a law library porter and 2) it made him a target for a physical attack by other inmates.

### A. Restricting Plaintiff's Movement and Job Prospects

First, Plaintiff claims that six months after he was labelled in the cell book, his "cell movement had been constantly curtailed so much that on June 3, 2014 C.O. Rathengaber went into plaintiff inmate's file and ... conspired with Sgt. Johnson and the Educational Supervisor Ms. Marchese, [to] have plaintiff unjustly restricted from his assigned school porter job." (*Id.* ¶ 17.) Plaintiff claims that he immediately filed grievances, all of which were to no avail, and that subsequently, C.O. Rathengaber retaliated against Plaintiff by gossiping with other correctional officers and inmates and turning Plaintiff into "a target." (*Id.* ¶ 17.) Plaintiff then asserts that C.O. Radway and C.O. Turman went to Sgt. Claudio to ensure that Plaintiff was restricted from working as the law library porter, which he was otherwise poised and qualified to do. (*Id.* ¶ 19.) Plaintiff claims that Sgt. Claudio yelled at him, calling him "a sexual predator" and made it clear that the library was "getting rid of all sex offenders...starting with [Plaintiff.]" (*Id.* ¶ 20.)

On February 22, 2015, Plaintiff claims that he again filed grievances and a complaint to Ms. Lesley Malin, the Deputy Superintendent of Programs, as well as with Superintendent Michael Capra and to the Deputy Commissioner of DOCCS, all of which again were to no avail. (*Id.* ¶ 21.) After these complaints, Plaintiff claims that Sgt. Claudo retaliated against Plaintiff by removing him from another assigned job. (*Id.*) Plaintiff further alleges that in one form or another, he continued to be told by various officers that he could no longer work as a law library porter in the school building due to his status as a sex offender, as the organization was "getting rid of all sex offenders" in Sing Sing's school building. (*Id.* ¶¶ 22-24.)

### B. Deliberate Indifference in Making Plaintiff a Target for Attack

Plaintiff next claims that after filing several grievances and complaints against various officers for their supposedly retaliatory conduct against him, he became the "target of a severe assault" in his cell. (*Id.* ¶ 25.) Specifically, Plaintiff claims that on July 19, 2015, he was severely hit on the left side of his skull with an unknown object by an unknown inmate, which left him unconscious and resulted in his having a skull fracture that required surgery. (*Id.* ¶¶ 26-27.) He claims that various officers are liable for this attack as they were deliberately indifferent to the heightened risk of his being attacked once they labelled Plaintiff in the cell book.

## LEGAL STANDARD

### A. Motion to Dismiss

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Although for the purposes of a motion to dismiss [a court] must take all of the factual allegations in the complaint as true, [it is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). It is not necessary for the complaint to assert "detailed factual allegations," but must allege "more than labels and conclusions." *Twombly*, 550 U.S at 555. The facts in the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.*

"*Pro se* complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*." *Thomas v. Westchester*, No. 12–CV–6718 (CS), 2013 WL 3357171 (S.D.N.Y. July 3, 2013). The court should read *pro se* complaints "'to raise the strongest arguments that they suggest,'" *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010) (summary order) (quoting *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("even after *Twombly*, though, we remain obligated to construe a pro se complaint liberally."). "However, even pro se plaintiffs asserting civil rights claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a right to relief above the speculative level." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). Dismissal is justified, therefore, where "the complaint lacks an allegation regarding an element necessary to obtain relief," and therefore, the "duty to liberally construe a plaintiff's complaint [is not] the equivalent of a duty to re-write it." *Geldzahler v. New York Medical College*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted).

B. **Section 1983**

"To recover under s 1983 petitioner must prove two separate and independent elements: first, that respondent subjected her to the deprivation of a right 'secured by the Constitution and laws'; and, second, that while doing so respondent acted under color of a statute, ordinance, regulation, custom, or usage of the [state]." *Adickes v. S.H. Kress & Co*, 298 U.S. 144, 188-89 (1970).

C. **Retaliation Under the First Amendment**

A plaintiff asserting a retaliation claim has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the

plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case. *Id*. Rather, "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation... Otherwise the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds, Swierkewicz v. Sorema.,* 534 U.S. 506 (2002) (citations omitted).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be "supported by specific and detailed factual allegations," not stated "in wholly conclusory terms."" *Friedl v. City of New York*, 210 F.3d 79, 85-86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

5

virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act.... Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

### D. Deliberate Indifference Under Eight Amendment

Deliberate indifference under the Eighth Amendment is evaluated under a two-pronged test comprised of both objective and subjective components. *See Darnell v. Pineiro*, 849 F.3d 17, 32-35 (2d Cir. 2017); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (citations omitted). To meet the objective prong, a plaintiff must assert that the alleged medical need is a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). "That is, the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn

6

that a substantial risk of serious harm exists, and he must also draw the inference." *Hill*, 657 F.3d at 122 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal alterations omitted)).

## DISCUSSION

Reading the Complaint liberally, as the Court is required to do, the only possible causes of action that are alleged are: (1) retaliation under the First Amendment for Plaintiff's filing of grievances and (2) deliberate indifference under the Eight Amendment for failure to protect Plaintiff from being attacked/assaulted.

For the following reasons, Plaintiff's Complaint fails to state a claim under both.

### a. Retaliation under the First Amendment

Defendants are correct that inmates do not have any constitutional, statutory, or regulatory right to any prison job. *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir.1987) ("New York law does not give a prisoner 'any statutory, regulatory or precedential right to his prison job.'"). Yet what is fatal to Plaintiff's retaliation claim is Plaintiff's failure to allege any connection—let alone a causal one—between his *filing of grievances and complaints* and his being denied the porter position.

Prisoners certainly engage in protected activity when they file grievances and complaints about their prison conditions. *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.") Therefore, even if they are not entitled to any job in the prison system, they are entitled to make complaints about their beliefs of unlawful conduct, and that too, without fear of repercussions. Thus, there can be a cognizable claim of retaliation when a prisoner is denied an opportunity to which he was not necessary entitled, but which would deter similarly situated prisoners from exercising their protected federal rights. *Dawes*, 239 F.3d at 493 ("retaliatory

7

conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation").

The issue here is not whether Plaintiff was entitled to the library porter job. Rather, it is whether Plaintiff sufficiently alleged that he was only denied that job *because* of making his protected complaints, such that similarly situated individuals would be deterred from making similar complaints in the first place. In that vein, the fatal problem here is that Plaintiff repeatedly alleges that he was denied the law library porter job that he was otherwise assigned to *because he was a known sex offender*, not because he engaged in protected activity (i.e. filed grievances/complaints). (*See* Compl. ¶ 19 ("This is when on Sgt. Claudio yelled out in the school building, at plaintiff, 'that you are not allowed in my school building[] while I am the school building Sargeant; and you know why,'…calling Plaintiff a sexual predator…and this same Sgt Claudio actually told Plaintiff, 'we are getting rid of all sex offenders in Sing Sing's school building and we are starting with you." ); Compl. ¶ 22 ("Then both of the said to the Plaintiff…that we made a mistake and that's to[o] bad, because we are now getting rid of all sex offenders[] who has a job in Sing Sing's school building, and the law library porter job is in the school building."); Compl. ¶ 24 ("you and the rest of the sex offenders slip through the cracks, so now me and the School building sergeant Claudio are getting rid of all the sex offenders out of Sing Sing's school building; and we are both going to make sure no sex offender slip through the cracks no more.").)

While Plaintiff's complaint alleges facts that could arguably provide circumstantial evidence that – based on timing – there was a connection between his filing of grievances/complaints and not receiving the porter position, such circumstantial facts are insufficient to allege that the protected activities were "substantial or motivating factor" in the prison officials' actions against the plaintiff. *See Graham v. Henderson*, 89 F.3d at 79; *Friedl*, 210

8

F.3d at 85-86 ("To survive a motion to dismiss, such claims must be "supported by specific and detailed factual allegations," not stated "in wholly conclusory terms.") (quoting *Flaherty*, 713 F.2d at 13). Because it is not even clear from the Complaint that the decision not to give Plaintiff the porter position was close in time and immediately after his filing grievances, at this stage, the Complaint is deficient in making out a First Amendment retaliation claim.

Finally, although Plaintiff adduces additional facts that make the causal connection between his engaging in protected activities and experiencing retaliation more explicit in his Opposition to the Defendants' Motion to Dismiss, (ECF No. 29), the Court is confined to the facts alleged in his Complaint for the purposes of considering a motion to dismiss under 12(b)(6). *See Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Accordingly, the Court dismisses Plaintiff's Complaint, but *without* prejudice. Should Plaintiff seek to file an amended complaint with sufficiently detailed facts, he retains the opportunity to do so.

### b. Failure to Protect Under the Eighth Amendment

The crux of Plaintiff's Eight Amendment claim is that Defendants were deliberately indifferent to Plaintiff's risk of harm because they disclosed his underlying criminal conviction, thereby making him a target for violence, and then failed to protect him from the assault. (*See* Compl. ¶¶ 16, 25-27.) This Court disagrees.

Again, to make out any Eighth Amendment claim, a Plaintiff must "satisfy a two-prong test with both objective and subjective components." *Banks v. William*, No. 11-CV-8667(GBD)(JLC), 2012 WL 4761502, at *3 (S.D.N.Y. Sept. 27, 2012), *report and recommendation adopted by* 2013 WL 764768 (Feb. 28, 2013). Because the Eighth Amendment "requires prison officials to take reasonable measures to guarantee the safety of inmates in their

custody[,]" *Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 620 (2d Cir. 1996), for a failure to protect claim to survive, a plaintiff must allege that, objectively, the conditions of his incarceration posed a "substantial risk of serious harm" and, subjectively, the defendants acted with deliberate indifference in failing to protect the inmate from such harm. *Farmer,* 511 U.S. at 834.

Here, Plaintiff fails to allege that he was at higher risk of serious harm because he was listed in the alpha cell log. Rather, all that Plaintiff states is that "during the process of these grievances and complaints, [he] was a target of a[] severe assault in the targeted Sing Sing's HBA cell (A-H-66) (that Plaintiff complained about being a target in a labeled on Sing Sing's alpha cell movement and control sheet)" (Compl. ¶ 25.) Arguably, Plaintiff is again trying to draw a causal connection between the timing of when he filed certain grievances and when he was attacked. For the same reasons as with his First Amendment retaliation claim, not only are such loose assertions insufficient to draw any causal connection for retaliation purposes, but as far as the required prongs for deliberate indifference, Plaintiff's assertions fail to allege that: 1) objectively, his being listed in the cell log and filing of grievances substantially increased his risk of harm from what it would have otherwise been and 2) Defendants subjectively knew about this increased risk of harm and then deliberately and willfully disregarded it, leading to Plaintiff's injuries.

In addition, as Defendants correctly note, courts in the Southern District of New York tend to require that prison officials had tangible notice—that is, actual knowledge about a prior altercation between the plaintiff and his attacker or about threats that had been made against the plaintiff, before they can be deemed deliberately indifferent and to subsequent inmate-on-inmate violence. *See Thomas v. DeMeo,* 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017) ("In general, to satisfy the requirements of an Eighth Amendment failure to protect claim, a 'plaintiff must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of

threats that had been made against the plaintiff.' In the absence of such allegations, prison officials are not liable for any harm caused by inmate-on-inmate violence.") (internal citation omitted); *Parris v. N.Y. State Dep't Corr. Servs.*, 947 F.Supp.2d 354, 363 (S.D.N.Y. 2013) ("Such culpability exists when an official 'has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." *Hayes*, 84 F.3d at 620. The plaintiff 'must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.'") (internal citations omitted). In *Fernandez v. N.Y.C. Dep't of Corr.*, 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010), the Court explained the types of facts that the plaintiff needed to plead:

> Plaintiff's complaint fails to state facts from which a court can reasonably infer that any officer at DOC had knowledge of a risk to Plaintiff, and disregarded that risk by failing to take reasonable measures to protect Plaintiff's safety. Plaintiff has not pled, for example, that he and inmate Simmons were involved in a prior altercation, that Simmons had previously threatened him, or that there was any other reason for officers at DOC to be on notice that there was a risk of altercation between Plaintiff and inmate Simmons. Absent clear notice of a risk of harm to the prisoner, "[c]ourts routinely deny deliberate indifference claims based upon surprise attacks."

And indeed, in *Coronado v. Goord*, No. 99 Civ. 167, 2000 WL 1372834, at *6 (S.D.N.Y. Sept. 25, 2000), the Court went so forth as to require:

> (1) there were numerous other inmate-on-inmate attacks in the GHCF yard; (2) these attacks posed a substantial risk of serious harm to inmates; (3) the Defendants knew about these prior attacks; (3) despite their knowledge of the prior attacks, Defendants failed to take steps to reduce the risk of harm to inmates; (4) the prior attacks and the stabbing of [the plaintiff] were similar enough that any steps Defendants could have taken to alleviate the danger posed by the other attacks would also have reduced the risk to [the plaintiff]; and (5) if Defendant had taken such steps, [the plaintiff] would not have been stabbed in the yard on June 30, 1997.

Here, Plaintiff's Complaint has no facts about a prior history of violence between Plaintiff's attacker and himself (in fact, Plaintiff purportedly does not know who the attacker is, suggesting that this may have been the first incident of this type). *See Ayers v. Coughlin*, 780

F.2d 205, 209 (2d Cir. 1985) ("'An isolated omission to act by a state prison guard does not support a claim under section 1983 absent special circumstances indicating evil intent, recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent on him."). Moreover, Plaintiff does not allege that he made any prior complaints about being subject to violence or threatened about an attack. As such, Plaintiff's scant assertions fail to meet the pleading standards of Rule 12(b)(6) and fail to make out a *prima facie* claim for failure to protect under the Eighth Amendment.

Accordingly, Plaintiff's Eight Amendment Claim is also dismissed without prejudice.[2]

### c. Personal Involvement & Qualified Immunity

Because the Court has not found a single cognizable constitutional claim in Plaintiff's Complaint, it need not address whether Plaintiff has sufficiently pleaded that the Officers were personally involved in any such violations or whether they would be subject to qualified immunity. As such, the Court leaves these issues open to be addressed at a later point in time.

### d. Leave to Amend

"'[A] pro se complaint is to be read liberally,' and should not be dismissed without granting leave to replead at least once when such a reading 'gives any indication that a valid claim might be stated.'" *Barnes v. U.S.*, 204 Fed. App'x 918, 919 (2d Cir. 2006) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Taking Plaintiff's *pro se* status into consideration, the Court will permit Plaintiff an opportunity to amend his Complaint to state a valid claim.

---

[2] Although Plaintiff also complains about supposed taunts and verbal harassment that he was subject to in Sing Sing due to the widespread knowledge of him being sex offender, such allegations could not color an Eighth Amendment violation as a matter of law. *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 474 (S.D.N.Y. 1998) ("Verbal harassment or profanity alone, unaccompanied by any injury no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and therefore is not actionable under 42 U.S.C. § 1983."). As such they are dismissed with prejudice.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss is GRANTED without prejudice. The Clerk of the Court is respectfully requested to terminate ECF No. 24. The Court will allow Plaintiff thirty days (30) to Amend his Complaint if he so desires. If no amendment is made by February 7, 2019, the Complaint will be dismissed with prejudice and the action terminated without further notice.

Dated: January 7, 2019
      White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge