UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TONY K. HARRISON,

                    Plaintiff,

    -against-

C.O. TRAYLOR, C.O. RATHGEBER, C.O.
RADWAY, C.O. TURMAN, SGT. JOHNSON,
SGT. PLUMMER, SGT. CLAUDIO, LESLEY
MALIN, SUPT. MICHAEL CAPRA, and JEFF
MCKOY, *Deputy Commissioner of Programs*,

                    Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __02/25/2022__

No. 17 Civ. 6678 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    *Pro se* Plaintiff Tony K. Harrison, an inmate in the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action under 42 U.S.C. § 1943, alleging that correctional officers retaliated against him for filing grievances against them by preventing him from working as a law library porter, in violation of his First Amendment rights, and that they were deliberately indifferent in purportedly mislabeling him as a gang member, for which an unknown inmate assaulted him, in violation of his Eighth Amendments rights. (Am. Compl., ECF No. 31.) He sues Defendants C.O. Traylor, C.O. Rathgeber, C.O. Radway, C.O. Turman, Sgt. Johnson, Sgt. Plummer, Sgt. Claudio, Lesley Malin (Deputy Superintendent of Programs), Jeff McKoy (Deputy Commissioner for Programs), and Superintendent Michael Capra, all of whom are employees of DOCCS, (collectively, "Defendants"). (*Id.*)

    Presently pending before the Court is Defendants' motion to dismiss *pro se* Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 44.) For the following reasons, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND

The following facts are derived from the Amended Complaint and are taken as true and construed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.

The relevant conduct here occurred during *pro se* Plaintiff's previous period of incarceration at the Sing Sing Correctional Facility.[1] (*See* Am. Compl. ¶ 14.) *Pro se* Plaintiff alleges that in January 2014, C.O. Traylor "deliberately labeled [him] . . . on the Sing Sing's "Alpha Cell Book movement and control sheet," causing him to become a target to correctional officers and inmates with access to these logs. (*Id.*) *Pro se* Plaintiff alleges that this labeling precipitated unlawful conduct, including: (1) preventing him from working as a law library porter; and (2) making him a target for a physical attack by other inmates. (*Id.* ¶¶ 15–17.)

## I.   Restricting *Pro se* Plaintiff's movement and job prospects

*Pro se* Plaintiff claims that after C.O. Traylor purportedly mislabeled him as a gang member in the Alpha Cell Book, and "that form of targeting" did not work, she then conspired with C.O. Rathgeber and Sgt. Johnson to use his underlying criminal conviction to prevent him from working as a law library porter. (*Id.* ¶ 17.) *Pro se* Plaintiff further claims that in June 2014, he first started filing grievances and complaints about his cell location, mislabeling, and denial from being a law library porter, all which Superintendent Capra and Deputy Superintendent for Programs Malin denied. (*Id.* ¶ 18.)

*Pro se* Plaintiff then claims that six months later, C.O. Rathgeber retaliated against him for the grievances and complaints he filed against her by letting other correctional officers and inmates know about his underlying criminal conviction. (*Id.* ¶ 19.) He also asserts that, in January 2015, C.O. Rathgeber conspired with C.O. Radway and C.O. Turman to again retaliate against him by

---

[1] When *pro se* Plaintiff commenced this action on August 31, 2017, he resided at the Attica Correctional Facility, but then moved back to Sing Sing on October 25, 2019. (ECF No. 34.)

requesting Sgt. Claudio to "unjustly restric[]" *pro se* Plaintiff from working as a law library porter and from receiving "special access call outs" at Sing Sing's school building. (*Id*. ¶ 20.) *Pro se* Plaintiff claims that when he confronted Sgt. Claudio about these restrictions, Sgt. Claudio yelled at him and told him that he should already know why: because "you are a sex offender." (*Id*. ¶ 21.)

On February 22, 2015, *pro se* Plaintiff claims that he filed additional grievances and complaints about these restrictions, all which Deputy Superintendent of Programs Malin, Superintendent Capra, and Deputy Commissioner of DOCCS McKoy denied. (*Id*. ¶ 22.) After he filed these complaints, *pro se* Plaintiff claims that Sgt. Claudio conspired with Sgt. Plummer to retaliate against him a month later by removing him to another job assignment. (*Id*.) He further alleges that in one form or another, these correctional officers told him that he could no longer work as a law library porter in the school building because he was a sex offender, and that the organization was "getting rid of all sex offenders" in Sing Sing's school building. (*Id*. ¶¶ 23–24.)

## II.    Deliberate indifference in making *pro se* Plaintiff a target for attack

*Pro se* Plaintiff next claims that after filing several grievances and complaints against these correctional officers for their retaliations, he was "brutally assaulted" in his cell. (*Id*. ¶ 26.) Specifically, he claims that on July 19, 2015, an unknown inmate severely hit him on the left side of his skull with an unknown object, for which he was ambulated to Westchester Medical Center. (*Id*. ¶¶ 26–27.) He claims to have suffered a skull fracture in the left temporo-parietal area, for which he had to undergo exploration and debridement surgery on July 20, 2019. (*Id*. ¶ 28.)

As relief for these violations, *pro se* Plaintiff seeks monetary damages for an amount no less than $360,000 and attorney's fees. (*Id.* at 9.)

## III.    Procedural Background

On August 31, 2017, *pro se* Plaintiff filed his original Complaint, alleging that Defendants violated his rights under the First and Eighth Amendment. (Compl., ECF No 2.) On April 27, 2017,

Defendants filed a motion to dismiss *pro se* Plaintiff's Complaint (ECF No. 24), which the Court granted on January 7, 2019 (ECF No. 30.) The Court dismissed *pro se* Plaintiff's Complaint without prejudice for failure to state a claim and with leave to replead. (*Id.*) *Pro se* Plaintiff filed his Amended Complaint on January 23, 2019. (ECF No. 31.)

In February 2021, Defendants sought leave to file their motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 39 & 40.) Defendants filed their own briefing and *pro se* Plaintiff's on April 6, 2021: their notice of motion (ECF No. 44), their memorandum in support ("Motion," ECF No. 45), *pro se* Plaintiff's response in opposition ("Response in Opposition," ECF No. 46), and their reply ("Reply," ECF No. 47).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. *Pro se* litigants are not exempt from these pleading standards, but courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009). *Pro se* complaints are read with a "special solitude" to raise the "strongest [claims] that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474–75 (2d Cir. 2006) (internal quotation marks and citations omitted).

4

## II.  42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

The Court liberally construes *pro se* Plaintiff's Amended Complaint to assert the exact same claims under 42 U.S.C. § 1983 that he alleged in his original Complaint and that the Court dismissed for failure to state a claim—namely, for violations of his First Amendment right to be free from retaliation for exercising his right to free speech, and his Eighth Amendment right to be free from cruel and unusual punishment. (*Compare* Compl. at 6–9; *with* Am. Comp at 3–7.)

Defendants argue that the Court should dismiss the Amended Complaint with prejudice because *pro se* Plaintiff has simply regurgitated the same claims from his original Complaint that the Court previously dismissed. (Mot. at 14–17.) They aver that these amended claims, which rely ostensibly on the same facts from the original ones with some minor variations, still suffer from the same defects the Court found in its previous opinion and order. (*Id.*) Hence, Defendants argue

that the "law of the case" doctrine applies here to dismiss *pro se* Plaintiff's claims once again because he has failed to cure the deficiencies of his § 1983 claims. (*Id.*) After due consideration, the Court agrees with Defendants.

**I.    The "Law of the Case" doctrine is applicable to the instant motion**

Under the "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983); *see also United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009). "Law of the case directs a court's discretion, it does not limit the tribunal's power." *Id.*; *see also Rezzonico v. H & R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999) ("The doctrine expresses, in shorthand fashion, a practice of courts generally not to reconsider that which has already been decided. But it does not purport to be a legally binding limitation on the court's authority to reconsider such matters."). However, "[a] court's reconsideration of its own earlier decision in a case" requires "compelling circumstances, consisting principally of (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice." *Carr*, 557 F.3d at 102.

As noted above, the Court liberally construes *pro se* Plaintiff's Amended Complaint to assert the exact same claims under § 1983 that he alleged in his original Complaint and that the Court dismissed for failure to state a claim—namely, for violations of his First Amendment right to be free from retaliation for exercising his right to free speech, and his Eighth Amendment right to be free from cruel and unusual punishment. (*Compare* Compl. at 6–9; *with* Am. Comp at 3–7.) A review of the Complaint and Amended Complaint also reveals that Defendants are correct in that the facts alleged in both pleadings are substantially the same with some minor variations.

Further, there has been no intervening change in controlling law and *pro se* Plaintiff advances no new evidence. Moreover, *pro se* Plaintiff does not appear to argue there was a clear

6

error of law in the Court's prior rulings in this case. Accordingly, because the main issue before the Court is whether *pro se* Plaintiff cured the defects in his retaliation and deliberate indifference claims, the Court finds that its prior rulings in dismissing *pro se* Plaintiff's original Complaint are still applicable in determining whether the Amended Complaint survives Defendants' motion to dismiss. The Court now analyzes both of *pro se* Plaintiff's claims in his Amended Complaint under its prior rulings.

## II. *Pro se* **Plaintiff's retaliation claim under the First Amendment must be dismissed**

A plaintiff asserting a retaliation claim for exercising her First Amendment rights has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). In its prior rulings, the Court concluded that the main defect in *pro se* Plaintiff's original retaliation claim was that he failed "to allege any connection—let alone a causal one—between his *filing of grievances and complaints* and his being denied the porter position." *Harrison v. Traylor*, No. 17-CV-6678 (NSR), 2019 WL 120774, at \*4 (S.D.N.Y. Jan. 7, 2019) (emphasis added). As the Court previously held,

> [t]he issue here is not whether [*pro se*] Plaintiff was entitled to the library porter job. Rather, it is whether [he] sufficiently alleged that he was only denied that job *because* of making his protected complaints, such that similarly situated individuals would be deterred from making similar complaints in the first place.

*Id.* "[T]he fatal problem . . . [was] that [*pro se*] Plaintiff repeatedly allege[d] that he was denied the law library porter job that he was otherwise assigned to *because he was a known sex offender*, not because he engaged in protected activity (*i.e.*[,] filed grievances/complaints)." *Id.* (emphasis in original).

Here, even when liberally construing the Amended Complaint in the light most favorable to him, *pro se* Plaintiff still fails to allege any connection between the alleged protected activity—the filing of grievances and complaints—and Defendant's adverse action against him—the denial of his porter position. Indeed, *pro se* Plaintiff alleges in his Amended Complaint that one of the reasons for which he *even began* filing grievances and complaints was that Defendants prevented him from being a law library porter. (*See* Am. Compl. ¶ 17 (alleging that C.O. Traylor conspired with C.O. Rathgeber and Sgt. Johnson by using his underlying criminal conviction to "ban" him from the area where he "did porter work."); *id.* ¶ 18 (alleging that in June 2014, he filed grievances and complaints because he was "a target and being restricted from assigned work area[.]"). But most notably, he alleges that the first time Defendants retaliated against him was *six months after* they denied him the porter position (*Id.* ¶ 19.) As such, *pro se* Plaintiff cannot plausibly claim that Defendants retaliated against him by denying him the porter position since that was precisely one of the bases for his grievances and complaints against them in the first place.

Thus, *pro se* Plaintiff's retaliation claim in his Amended Complaint fails for the same reason his original claim failed: for not sufficiently "alleg[ing] that the protected activities were [a] 'substantial or motivating factor' in the prison officials' actions against [him]." *Harrison*, 2019 WL 120774, at *5 (citing *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996); *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000) ("To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'")).

### III.   *Pro se* **Plaintiff's deliberate indifference claim under the Eighth Amendment must also be dismissed**

Deliberate indifference under the Eighth Amendment is evaluated under a two-pronged test comprised of both objective and subjective components. *See Darnell v. Pineiro*, 849 F.3d 17, 32-

35 (2d Cir. 2017); *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011). "[T]o establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health,' which includes the risk of serious damage to 'physical and mental soundness.'" *Darnell*, 849 F.3d at 30 (citations omitted). To meet the objective prong, a plaintiff must assert that the alleged medical need is a "sufficiently serious" condition that "could result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see also Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (noting that standard contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain").

The subjective component requires a prisoner to show that the defendant officials acted with a "sufficiently culpable state of mind" in depriving him of adequate medical treatment. *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (citing *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006)). "That is, the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Hill*, 657 F.3d at 122 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (internal alterations omitted)).

In its prior rulings, the Court concluded that *pro se* Plaintiff's original deliberate indifference claim suffered from two main defects. First, *pro se* Plaintiff failed to satisfy the two-pronged test by not sufficiently alleging that: "[(]1)objectively, his being listed in the cell log and filing of grievances substantially increased his risk of harm from what it would have otherwise been[;] and [(]2) Defendants subjectively knew about this increased risk of harm and then

9

deliberately and willfully disregarded it, leading to [*pro se*] Plaintiff's injuries." *Harrison*, 2019 WL 120774, at *5.

And second, *pro se* Plaintiff failed to allege any facts that Defendants had "tangible notice—that is, actual knowledge about a prior altercation between [him] and his attacker or about threats that had been made against [him], before they can be deemed deliberately indifferent . . . to subsequent inmate-on-inmate violence." *Id.* at *6 (citing *Thomas v. DeMeo*, 2017 WL 3726759, at *8 (S.D.N.Y. Aug. 28, 2017). The Court also noted that *pro se* Plaintiff in fact alleged that he did not know who his attacker was, "suggesting that this may have been the first incident of this type" and that he had not "made any prior complaints about being subject to violence or threatened about an attack"—all allegations which fail to establish a viable claim for deliberate indifference. *Id.* (citing *Ayers v. Coughlin*, 780 F.2d 205,209 (2d Cir. 1985) ("An isolated omission to act by a state prison guard does not support a claim under section 1983 absent special circumstances indicating evil intent, recklessness, or at least deliberate indifference to the consequences of his conduct for those under his control and dependent on him.")).

Here, even when liberally construing the Amended Complaint in *pro se* Plaintiff's favor, his deliberate indifference claim still fails for the same reasons his original claim failed. To be sure, at best, *pro se* Plaintiff appears to allege that he became a target of "gang intelligence and rival gangs" after Defendants mislabeled him with what he avers is "a gang member tag": a "major crep." (*See* Am. Compl. ¶¶ 15–16.) But such allegations, without more, are merely conclusory and insufficient to establish first, objectively, how this purported "gang member tag" "substantially increased his risk of harm from what it would have otherwise been," and second, whether "Defendants subjectively knew about this increased risk of harm and then deliberately and willfully disregarded it[.]" *Harrison*, 2019 WL 120774, at *5.

Most notably, the Amended Complaint contains no facts indicating, much less suggesting, how the July 19, 2015 attack was in any way connected to his mislabeling nine months before in January 2014. For instance, *pro se* Plaintiff fails to allege whether (1) he received previous threats from any purported rival gang member between January 2014 and July 2015; (2) his unknown attacker assaulted him because of his mislabeling, or even whether the attacker was affiliated with a rival gang; (3) there was a prior history of violence between him and his attacker; and (4) Defendants subjectively knew that labeling him a "major crep" in the Alpha Cell Book would result in an increased risk of harm and then deliberately and willfully disregarded it.

Indeed, *pro se* Plaintiff himself appears to expressly deny that there was any connection between the attack and his mislabeling. Specifically, he alleges that it was only after Defendants mislabeled him and "*that form of targeting [him] did not work because [he] was not a part of any gang*," when they used his underlying criminal conviction to deny him the porter position. (Am. Compl. ¶ 17 (emphasis added).) And even when construing this allegation in the light most favorable to *pro se* Plaintiff, a question remains: if "that form of targeting" did not work around January 2014, then why did it work months later on July 19, 2015? The Amended Complaint provides no answers in the form of specific and detailed factual allegations; instead, it merely offers "wholly conclusory terms" that cannot survive a motion to dismiss. *Friedl*, 210 F.3d at 85–86. Therefore, the Court concludes that *pro se* Plaintiff's deliberate indifference claim in his Amended Complaint fails for the same reasons his original claim failed.

## IV.    Leave to Amend

"The Second Circuit has instructed courts not to dismiss a complaint 'without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" *Howard v. Brown*, No. 15-CV-09930 (ER), 2018 WL 3611986, at *6 (S.D.N.Y. July 26, 2018) (quoting *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013)).

However, where "the Court has put Plaintiff on notice of the deficiencies in his original complaint and given him an opportunity to correct these deficiencies in an Amended Complaint, but Plaintiff has failed to do so, dismissal with prejudice is appropriate." *Coon v. Benson*, No. 09-CV-00230 (SCR) (LMS), 2010 WL 769226, at *4 (S.D.N.Y. Mar. 8, 2010). Here, the Court previously detailed the deficiencies in his original Complaint and provided *pro se* Plaintiff leave to amend. However, his Amended Complaint fails to address these exact same deficiencies. Therefore, *pro se* Plaintiff's claims must be dismissed with prejudice without leave to replead.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No. 44) and DISMISSES *pro se* Plaintiff's Amended Complaint in its entirety without leave to replead. The Clerk of the Court is directed to terminate the motion at ECF No. 44, to enter judgment accordingly, and to close the case. The Clerk of the Court is moreover directed to mail a copy of this Opinion and Order to *pro se* Plaintiff at his address listed on ECF and to file proof of service on the docket.

Dated:  February 25, 2022
       White Plains, NY

SO ORDERED:

NELSON S. ROMÁN
United States District Judge

12